**PIONEER POINT HOMEOWNERS ASSOCIATION, INC., Plaintiffs–Respondents,**

and

**Pioneer Point Property and Homeowners Association, Inc., Intervenors–Respondents,**

v.

**Danny Joel BOOTH and Mary Grace Booth, Defendants–Appellants.**

No. 26168.

Missouri Court of Appeals,
Southern District,
Division One.

Dec. 6, 2005.

J. Patrick Sullivan, Sullivan Law Office, P.C., Branson, for Appellants.

Greggory D. Groves, Lowther Johnson Attys. at Law, LLC, Springfield, for Respondents.

PHILLIP R. GARRISON, Presiding Judge.

Danny Joel Booth ("Booth") and Mary Grace Booth, (collectively referred to as "Appellants") appeal a judgment entered against them and in favor of Pioneer Point Homeowners Association, Inc. ("Homeowners Association II") and Pioneer Point Property and Homeowners Association, Inc. ("P & H") (collectively referred to as "Respondents") claiming that Respondents did not have the authority to enforce the provisions contained in the "Statement of Reservations, Restrictions, Taxes and Assessments" ("Statement of Reservations") governing property located in Pioneer Point First and Third Addition, a subdivision in Stone County, Missouri.

In 1973, Ralph D. Swanson ("Swanson") formed Pioneer Point, Inc. ("Pioneer Point, Inc."), a Missouri corporation, for development of a subdivision known as Pioneer Point, Inc. ("the subdivision"), in Stone County, Missouri. On March 25, 1976, Swanson, as President of Pioneer Point, Inc., formed another corporation, the Pioneer Point Homeowners Association, Inc. ("Homeowners Association I"). This non-profit corporation, of which he served as President, was formed in order to enforce the Statement of Reservations that was recorded on June 24, 1977.[1]

Appellants purchased Lot 17, Third Addition, on October 26, 1990, from Pioneer Point, Inc, to build their home. They purchased Lot 18, Third Addition, on September 14, 1991, and later purchased Lots 30, 31, and 38, Third Addition, in the subdivision, in order to build homes to sell. By operation of the Statement of Reservations Appellants automatically became members of Homeowners Association I.

On January 2, 1996, Swanson turned governance of the subdivision over to the homeowners themselves by forming a

---

1. Pursuant to the Statement of Reservations, each lot owner was assessed a certain amount per year for road maintenance, a monthly fee for unlimited use of water, and sewerage expenses, which was to be determined by Homeowners Association I. Homeowners Association I could raise or lower the water, sewerage and road assessments and could make special assessments as are necessary to cover operational expenses. To ensure that charges or assessments were paid promptly, an eight percent interest rate was applied to any delinquent fees, and lot owners could also be held responsible for any attorney's fees incurred in the collection of unpaid charges. The Statement of Reservations also provide that all charges or special assessments for water, sewerage and roads, as well as any attorney fees for collection shall be a lien upon the lot or tract owner if not paid when due.

third corporation, P & H, to take over and enforce the Statement of Reservations of the subdivision which had been previously handled by Swanson as President of Homeowners Association I. A board of the homeowners was elected and By–Laws were adopted.

Booth served on the board of P & H from September 1996 through August 1997, and his wife served on the board in October and November of 1998. Appellants paid all fees and assessments promulgated by Homeowners Association I, as well as those of P & H, until 1998. At its 1998 annual meeting, the board of P & H assessed a one time, special road assessment of $400 per lot to provide for hardsurfacing the roads.[2] Appellants questioned whether there was a quorum present for the vote on the special assessment and thus the legality of the assessment and all other business transacted at the annual meeting. In early January 1999, Appellants proceeded to review the Statement of Reservations and discovered that the corporate charter for Homeowners Association I had been forfeited by the State of Missouri on January 1, 1989, and had not been reinstated.

Believing that P & H was not the appropriate homeowners' association under the Statement of Reservations, Appellants ceased paying any fees or assessments it imposed. On March 25, 1999, P & H responded by filing a lien against Appellants' Lots 17 and 18 of the subdivision, pursuant to the Statement of Reservations, for non-payment of assessments for the period of January 1, 1998, and ending December 31, 1998.

P & H filed another lien on January 20, 2000, against Appellants' Lots 17 and 18 for non-payment of assessments for January 1, 1999, through December 31, 1999. On February 3, 2000, Appellants filed a two-count petition seeking a declaratory judgment. They alleged that P & H was not the homeowners' association for the subdivision, and that it did not have the authority to impose assessments or file liens. They also sought damages for slander of title.

Homeowners Association II was incorporated on September 25, 2001, while the suit between P & H and Appellants was pending. Swanson, as President of Homeowners Association I, assigned all of its rights, title and interest in the Statement of Reservations to the newly formed Homeowners Association II in an effort to "wrap up" Homeowners Association I. On September 27, 2001, Homeowners Association II and Pioneer Point, Inc. filed suit to enjoin Appellants from continuing a construction project on their property because they had not obtained a permit, as required in the By–Laws, and on October 11, 2001, P & H intervened.[3]

On February 21, 2002, P & H released the original liens it had filed against Appellants. On February 17, 2003, Homeowners Association II filed liens against Appellants, two of which covered the same time periods for unpaid assessments as those released by P & H. In May 2002, Homeowners Association II was granted leave to file an amended petition against Appellants in which it sought a declaratory judgment establishing that it was the proper homeowners' association under the Statement of Reservations and that it had the authority to levy and collect assessments provided therein, and compensation for unjust enrichment and quantum meruit. On June 3, 2002, the cases were consolidated and Appellants filed their claims for

**2.** It is not clear from the record if Appellants attended that meeting.

**3.** This issue was settled by agreement of the parties prior to trial.

declaratory judgment and slander of title as counterclaims.

A bench trial was held on September 12 and 23, 2003, and on November 13, 2003, the trial court entered its judgment, finding that Homeowners Association II was the appropriate entity to enforce the Statement of Reservations; that the By–Laws of the association were valid; that Homeowners Association II had the authority to impose assessments or file liens, and that the liens currently filed against Appellants were valid. Damages were awarded to Respondents in the amount of $23,364.51 for Appellant's failure to pay assessments, obtain a construction permit, comply with the Statement of Reservations and By–Laws regarding their construction project, and attorney's fees for both P & H and Homeowners Association II.[4] This appeal followed.

■ Appellants raise two similar points on this appeal. In Point I, Appellants allege that Homeowners Association II is not the appropriate entity to enforce the rules and restrictions set forth in the Statement of Reservations. In Point II, Appellants claim that Homeowners Association II does not have the authority to make assessments and/or file liens.[5]

■ Appellate courts review declaratory judgments under the standard applicable in other court-tried cases as set forth in

Murphy v. Carron, 536 S.W.2d 30 (Mo. banc 1976).[6] Beavers v. Recreation Ass'n of Lake Shore Estates, Inc., 130 S.W.3d 702, 708 (Mo.App. S.D.2004). We will affirm the trial court's ruling unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. Id.

■ Appellants rely upon their argument in Point I to support their allegation in Point II. As such we review both points together. Appellants, citing Kauffman v. Roling, 851 S.W.2d 789, 792 (Mo.App. W.D.1993), argue that the provision in the Statement of Reservations stating "[t]he homeowners' association referred to in this instrument is [Homeowners Association I]," is unambiguous and thus not open to judicial construction. Thus, as the expressly designated entity under the Statement of Reservations, they contend that Homeowners Association I is the only corporation that can enforce its provisions. However, the situation before us is distinguishable from Kauffman in that we are not faced with substantive changes to a specific restrictive covenant. 581 S.W.2d at 791.[7] As examined below, the precise question before us is more analogous to that in Sherwood Estates Homes Ass'n, Inc. v. Schmidt, 592 S.W.2d 244 (Mo.App. W.D.1979).

---

4. Though both are parties on this appeal, the trial court only declared that Homeowner Association II was the appropriate homeowners' association for the subdivision, not P & H.

5. In the argument portion of Point II Appellant also claims that the trial court erred in the amount of damages it awarded to Respondents. However this argument is not contained in either of Appellants' points relied on and therefore is deemed abandoned. See Baker v. Empire Dist. Elec. Co., 24 S.W.3d 255, 257 (Mo.App. S.D.2000). Arguments raised in Appellant's brief that do not appear in a point relied on will not be addressed. Id.

6. Murphy interpreted the provisions of Rule 73.01(c). The provisions of that rule now appear in essentially the same form in Rule 84.13(d), Missouri Rules of Civil Procedure (2003).

7. Appellants in that case attempted to amend the original restrictions to make substantive changes to that instrument in direct contradiction to a provision which prohibited such an amendment within twenty-five years of the initial recording of the Restrictions. Id.

Appellants also argue that this court's decision in *Beavers* relieves Appellants' contractual obligations under the Statement of Reservations with regard to any association because Homeowners Association I, which was expressly named as the governing association therein, was forfeited in 1989, and therefore legally no longer exists. 130 S.W.3d 702. In *Beavers*, this court held that when a nonprofit homeowners' association is administratively forfeited, the contractual obligations between said association and its members are extinguished because the association had ceased to exist. *Id.* at 717. However, *Beavers* is also distinct from this case because there, no successor association had been assigned the rights of the forfeited association. *Id.* Rather, there the association continued to act as though it was a lawfully organized corporation. *Id.* at 707.

Respondents argue that the September 25, 2001, assignment of rights from Homeowners Association I, allows Homeowners Association II to stand in its shoes with regard to the Statement of Reservations. The assignment provides in pertinent part:

[Homeowners Association I] ... a corporation which was administratively dissolved, ... in an effort to wrap up its final business, assigns to [Homeowners Association II] ... all of the rights, title, and interest it had in enforcing certain Reservations, Restrictions, Taxes and Assessments associated with [the subdivision].

Respondents direct us to a similar assignment of rights under restrictive covenants made by a developer to a subsequently formed homeowners' association, which was upheld in *Sherwood Estates*. In *Sherwood Estates*, the corporation which developed the subdivision (referred to as the "Company" in the restrictions) purported to have assigned its right to enforce the recorded restrictions on the real property in the subdivision, by virtue of subsequently recording the "Sherwood Estates Homes Association Declaration," which provided in pertinent part:

[t]he Association shall have the following powers and duties ... FIRST: To enforce, either in its own name or in the name of any owner within the district, any or all building restrictions which may have been heretofore, or may hereafter be imposed upon any of the land in said district[.]

*Id.* at 246–47. The trial court ruled that although the Company had effectively assigned its right to enforce the restrictions to the Association, the term "Company" in the "Approval of Plans" section of the restrictions did not include the Association, and therefore that power did not fall within the assignment. *Id.* at 247–248. On appeal the western district of this court reversed, holding that the stated purpose of both the Declaration and the restrictions would have been seriously undermined if the Association was not found to have the same authority to approve construction plans as had the Company. *Id.* at 247.

For the reasons stated above neither *Kauffman* nor *Beavers* controls this case. Appellants have not challenged the validity of the assignment in this appeal, rather they argue that "notwithstanding a purported assignment" Homeowners Association II does not have the right to impose assessments and file liens because the corporation so entitled was forfeited. Therefore, the only question before us is whether Missouri law allows for an assignment between corporations as to rights and obligations under restrictive covenants despite the fact that the assignor's name expressly appears in the covenant(s). *Sherwood Estates* teaches that such assignments are not contrary to the principle that courts should strictly construe restrictive cove-

nants, at least as long as the assignment is not contrary to the purpose of the restriction. 592 S.W.2d at 247.

 It is true that restrictive covenants "are not favorites of the law" and are to "be strictly construed." *Sherwood Estates*, 592 S.W.2d at 247 (quoting *Brasher v. Grove*, 551 S.W.2d 302, 303 (Mo.App. 1977)). However, "the principle that restrictions as to the use of real property 'should be strictly construed' and 'doubts resolved in favor' of its free use 'should *never* be applied in such a way as to defeat the plain purpose of the restriction.'" *Id.* (quoting *Brasher*, 551 S.W.2d at 303) (emphasis added); *see also Lake Saint Louis Community Ass'n v. Ravenwood Properties, Ltd.*, 746 S.W.2d 642, 644 (Mo.App. E.D.1988). Furthermore, the intent of the parties may be gathered by examining all of the provisions of the instrument. *Country Club Dist. Homes Ass'n v. Country Club Christian Church*, 118 S.W.3d 185, 189 (Mo.App. W.D.2003); *Brasher*, 551 S.W.2d at 303.

The clear intent of the developer of the subdivision in this case was that it be maintained, operated and governed by the homeowners themselves. The stated purpose of the Statement of Reservations was:

> to vest the entire control, operation, maintenance, care, repair and upkeep of said water well or wells, water distribution system, and sewage plant and sewerage distribution system, roads and streets in said Property Owners Association for the sole use and benefit of the purchasers.

In addition, the purpose stated in the Articles of Incorporation of Homeowners Association II is "providing services and duties of a homeowners association for [the subdivision]."

Furthermore, contrary to Appellant's assertions, there is express evidence that the Statement of Reservations allowed for the possibility that another entity might succeed Homeowners Association I. Under the heading "EASEMENTS," the Statement of Reservations state that "[e]asements ... are hereby by conveyed ... to the homeowners' association, its successors and assigns." Under "NUISANCES," the Statement of Reservations provide that "[a]ll lots shall be kept mowed by the owner, and upon failure thereof, the homeowners' association, its successors and assigns, shall have the right so to do [sic] at the cost of the owner." Finally under the section governing the regulation of the subdivision's sewage system, the Restrictions provide:

> [T]he Missouri Clean Water commission or Missouri Department of Natural Resources ... shall be entitled ... to entry of an order appointing a receiver or other officer appointed by the Court to take immediate possession of the sewer system for the purpose of operating, maintaining, repairing and improving the same ... until such time as the court finds that the *Homeowners Association or its successors* are capable of fulfilling and will perform the obligations imposed on them by this indenture. (emphasis added).

It is clear from the above provisions that one of the main objectives of the instrument was to provide that the governance and maintenance of the subdivision be vested in a homeowners' association in which all lot owners were members. The fact that one incorporated entity has taken the place of another by assignment does nothing to alter that intent. *Cf. Sherwood* 592 S.W.2d at 247. On the other hand, to say that Homeowners Association I is the only entity entitled to enforce the Statement of Reservations would be to defeat the overall purpose of that instrument because no association would be entitled to enforce the Statement of Reservations. In

cases such as *Beavers* such a result is unavoidable, however, as explained, this is not such a case.

Because there has been no challenge to the validity of the assignment between Homeowners Association I and II, and because we have found nothing to suggest that such assignments are disfavored in the law, we cannot say that the trial court erroneously applied the law in holding that Homeowners Association II was the appropriate entity to enforce the Statement of Reservations, and has the authority to make assessments and/or file liens.

Accordingly, Appellants' points are denied and the judgment of the trial court is affirmed.

PREWITT, J., and RAHMEYER, J., concur.