Roy L. BEAVERS, Jr., Plaintiff–
Appellant,

v.

Pat MCGINNIS, et al., Defendant–
Respondents.

No. SD 28939.

Missouri Court of Appeals,
Southern District,
Division Two.

Feb. 3, 2009.

Richard L. Schnake, Springfield, for Appellant.

Mark E. Rector, Lebanon, for Respondents.

NANCY STEFFEN RAHMEYER, Judge.

Roy L. Beavers, Jr. ("Appellant")[1] brought suit against ten individuals who acted as officers and directors ("Respondents") of Recreation Association of Lake Shore Estate ("the Association"). Appellant sought to recover, among other things, the attorney fees and expenses that he incurred in connection with litigating *Beavers v. Recreation Association of Lake Shore Estates, Inc.*, 130 S.W.3d 702 (Mo. App. S.D.2004) ("*Beavers I*").[2] *Beavers I* involved a dispute between Roy L. Beavers, Jr. and Valerie E. Beavers ("the Beavers") and the Association. When the Beavers purchased a lot in Lake Shore Estates subdivision in 1974, they became members of the Association. In 1980, the Association failed to file an annual report, which resulted in a forfeiture of its corporate charter effective January 1, 1981. On April 1, 1991, ten years and three months after the forfeiture was made effective, the Association applied for a rescission of the forfeited charter, which was granted by the Secretary of State on the same day. The Beavers refused to pay annual assessments claiming the Association had no power to levy any assessments.

In February 2001, the Association placed liens on the Beavers' lots and the Beavers brought suit to have the liens declared void because the Association was a "pretended" corporation and incapable of imposing liens on the Beavers' lots. They also sought to prevent the Association from entering any future assessments against their lots. The Beavers successfully argued in this Court that the Association was a "pretended" corporation because the Secretary of State's rescission of the forfeiture was untimely due to the fact that the rescission occurred outside the then ten-year period in which the forfeiture could be rescinded under section 355.507.4.[3] After this Court's decision in *Beavers I*, Appellant sued Respondents to recover the attorney fees and expenses that he incurred as a result of *Beavers I*. The trial court denied Appellant's requested relief. This appeal followed.

Appellant brings four points on appeal: (1) the trial court erred by ruling that the

---

1. Appellant's wife, Valerie, was also a plaintiff originally, but she died prior to the trial.

2. We shall give a brief summary of *Beavers I* without further attribution.

3. All references to statutes are to RSMo 2000, unless otherwise specified.

collateral litigation exception to the American Rule on attorney fees does not apply in this case; (2) the trial court erred by ruling that Respondents were shielded from individual liability on the ground that the imposition of liens on Appellant's lots occurred between the Secretary of State's purported rescission of the forfeiture of the Association's charter and this Court's decision in *Beavers I,* so that Respondents were duly elected officers and directors of the Association when the liens were filed; (3) the trial court erred by ruling that *res judicata* bars Appellant from maintaining this action on the ground that he could have sought attorney fees in the prior litigation in *Beavers I*; and (4) the trial court erred by failing to enter judgment for Appellant for $51,112.48 because Respondents breached a duty to Appellant not to cloud title to the lots without legal authority to do so, Appellant was required to incur attorney fees and expenses to clear title, the fees were incurred in good faith, and the fees were reasonable.

■■■ The trial court ruled, as one of the reasons that the collateral litigation exception did not apply, that the evidence did not support a finding that Respondents committed a wrong or breach of duty. In his first and fourth claims of error, Appellant addresses the heart of his lawsuit against Respondents, that the basis of his suit is the collateral litigation exception to the American Rule on attorney fees. The American Rule on attorney fees requires parties to bear their own attorney fees unless there is statutory authorization or a contractual agreement for the fees or when special or unusual circumstances make an award of attorney fees necessary to equitably balance benefits. *City of Cottleville v. St. Charles County,* 91 S.W.3d 148, 150 (Mo.App. E.D.2002). The collateral litigation exception to the American Rule allows a plaintiff to recover attorney fees that he expended in collateral litigation with a third party as a result of the defendant's wrongdoing. *Singer v. Siedband,* 138 S.W.3d 750, 754 (Mo.App. E.D. 2004). Furthermore, to recover fees, the plaintiff must show (1) that the collateral litigation was the natural and proximate result of the defendant's wrong or breach of duty; (2) that the fees were necessarily and in good faith incurred to protect the plaintiff from injury; and (3) that the amount of the fees was reasonable. *Ohlendorf v. Feinstein,* 697 S.W.2d 553, 556 (Mo.App. E.D.1985). "The collateral litigation must have been with a party different than the defendant from whom the fees are sought as damages." *Singer,* 138 S.W.3d at 754.

■■ This Court will affirm the judgment unless it is against the weight of the evidence, there is insufficient evidence to support it, or it erroneously declares or applies the law. *Crabby's, Inc. v. Hamilton,* 244 S.W.3d 209, 211 (Mo.App. S.D. 2008). Although his point relied on claims error in finding no "wrong" or "breach of any duty," Appellant focuses on the "breach of duty" in his argument. Appellant's argument is that Respondents owed a duty to Appellant not to cloud the title to his lots without legal authority to do so because Respondents admitted in their Answer that they owed such a duty and, therefore, are bound by that admission. Appellant contends that Respondents breached that duty when they clouded Appellant's title to his lots by authorizing and filing the liens. He further argues that since the Association had no legal existence, as determined by this Court, Respondents lacked the legal authority to authorize and file the liens.

Appellant emphasizes that testimony from Respondents at trial demonstrated that they continued to defend the lawsuit and pursue their counterclaim in *Beavers I*

despite their knowledge at that time of the plain meaning of section 355.507, under which the forfeited corporate charter could not be reinstated. Appellant also points out that Respondents filed the second lien against Appellant's lots after *Beavers I* had already been filed, and testimony at trial showed that Respondents proceeded with filing that lien despite knowing about section 355.507. Thus, Appellant's argument is that "clouding the title" is the equivalent of a breach of duty; his argument equates the ultimate outcome of *Beavers I* in this Court as tantamount to being "without legal authority."

Respondents, on the other hand, do not deny that they had a legal duty not to cloud the title to Appellant's property without legal authority. They deny, however, that the filing of the liens by the Association was a wrong or breach of that duty. Respondents contend that this Court would be applying a strict liability standard if it finds that Respondents are liable for committing a wrong that they did not know was a wrong at the time it was committed. Respondents claim that in the few cases in Missouri in which plaintiffs were awarded attorney fees based on the collateral litigation exception, the defendants committed acts that they knew were either illegal or a breach of duty. Specifically, Respondents look to *Johnson v. Mercantile Trust Company,* 510 S.W.2d 33 (Mo.1974), *State ex rel. Moore v. Morant,* 266 S.W.2d 723 (Mo.App.1954), and *Singer v. Siedband,* 138 S.W.3d 750 (Mo.App. E.D.2004), for support of their argument.

In *Johnson,* defendant bank lent money to a family and the loan was secured by the family's stock in Farmers and Merchants Bank. *Johnson,* 510 S.W.2d at 35. Belmont C. Johnson and his wife entered into an agreement with defendant bank to purchase the stock once the loan was in default. *Id.* at 36. After the purchase

was completed, the Johnsons were informed by Farmers and Merchants Bank that a question had been raised concerning the title of the stock that the Johnsons believed they purchased from defendant bank. *Id.* Farmers and Merchants Bank sought a declaratory judgment as to the true owner of the stock. *Id.* Defendant bank was named a party defendant but declined to participate and was dismissed. *Id.* The court in the Farmers and Merchants Bank suit found that defendant bank had only sold the Johnsons the notes securing the loan and not the actual stock. *Id.* The Johnsons filed suit against defendant bank to recover attorney fees incurred as a result of defending themselves in the Farmers and Merchants Bank case. *Id.* at 39. The court found that because the Johnsons had to defend title to the stock that defendant bank had agreed to convey, the collateral litigation exception was applicable and the Johnsons could recover the fees they incurred in the Farmers and Merchants Bank case. *Id.* at 40.

In *State ex rel. Moore v. Morant,* Curry's Clothing Company sued relators, and a deputy constable delivered a summons to the home of relators and left the summons with a fourteen-year-old child. 266 S.W.2d at 725–26. The return of the summons was false because it stated that the summons was left with someone over the age of fifteen years. *Id.* at 726. This was a breach of the constable's official duty to make a true return. *Id.* at 726. Judgment was entered in favor of Curry's Clothing Company. *Id.* at 725. Relators brought suit to recover, among other things, the attorney fees they paid to have a settlement arranged with Curry's Clothing Company. *Id.* at 727. The Supreme Court of Missouri held that

> the constable's bond stood good as an indemnity against all of the natural and proximate consequences of a breach of

the duty which the constable owed relators. Attorneys' fees expended in an effort to remove or minimize the injurious consequences of the act of the deputy constable were legitimate items of recovery.

*Id.*

In *Singer,* Herbert Singer signed a lease agreement for an apartment in a building owned by Isabel Siedband's father. 138 S.W.3d at 752. Over a year after Siedband's father's death, Siedband petitioned the court to administer her father's estate. *Id.* After Siedband was appointed as personal representative of the estate, she sued Singer for unpaid rent. *Id.* During the trial of the rent case, Siedband admitted that the date of death on her letters testamentary was incorrect and settled with Singer to dismiss the case. *Id.* Singer then sued Siedband, alleging that she fraudulently presented a false date of death to the court so that she could be appointed representative of her father's estate and maintain the rent action against Singer. *Id.* The jury found in favor of Singer. *Id.* On appeal, Siedband argued that Singer suffered no injury as a result of the fraud. *Id.* at 754. The appellate court found that Singer's damages were his attorney fees in the rent case. *Id.* The appellate court held that because Siedband in her representative capacity committed a fraud that caused Singer to incur attorney fees, Singer could recover those fees under the collateral litigation exception. *Id.*

Respondents argue that the defendants in *Johnson, State ex rel. Moore,* and *Singer* knew that their actions were wrong when they committed them; whereas in this case, Respondents' acts of imposing liens were not known to be wrong by anyone at the time they were committed because it was not until this Court handed down its *Beavers I* decision that the Association's authority to impose liens ceased.

Respondents note that when the liens were filed against Appellant's land, Respondents were acting in their capacity as fiduciaries of the Association, and within the scope of their authority and duties as officers and directors of an incorporated association, which was officially shown in good standing with the Secretary of State. Respondents contend that they did not commit a wrong or breach of duty when they filed the liens because they were entitled to rely upon the Association's good standing with the Secretary of State until this Court determined that the Association was not a corporation. Furthermore, because the interpretation and effect of section 355.507 was a complicated issue in *Beavers I* and many legal minds had differing opinions, Respondents argue that the fact that they knew of section 355.507 when they acted should not render their actions a wrong or breach of duty.

We initially note that Appellant brought a cause of action against Respondents entitled "Breach of Duty." Appellant failed to cite any cases for an independent cause of action entitled "Breach of Duty"; however, in his petition, Appellant alleges:

42. [Respondents] owed a duty to [Appellant] not to cloud the title to the Lots without legal authority to do so.

43. Prior to causing [Appellant] to be involved in unnecessary litigation against a third party, [Respondents] owed a duty to [Appellant]:

(A) to make a reasonable effort to determine whether [Respondents] had a legal right to impose liens upon property owned by [Appellant], . . .

(B) to make a reasonable effort to determine whether [Respondents] had a legal right to take legal action against [Appellant] to enforce any lien so imposed, . . .

(C) to investigate and be knowledgeable of the Missouri Corporation Statutes in effect in 1991. . . .

It appears the substance of Appellant's suit then is a claim that Respondents did not act reasonably. Assuming, without deciding, that Appellant has stated a valid claim, sufficient evidence supports the judgment.

This case was tried to the court, who specifically found that Respondents were acting in their official capacities as officers or directors when the liens were filed and they believed they had a fiduciary duty and responsibility to the membership to do so. The court further found that Respondents presented testimony that they were relying upon the Association's good standing with the Secretary of State's office when they filed the liens against the various Association members. The court concluded[4] that the collateral litigation exception to the American rule did not apply because there was insufficient evidenced adduced to support a finding that Respondents had committed a "wrong" or breached any duty to Appellant. In other words, it can be inferred that the court found that Respondents "made a reasonable effort" to determine their legal right to impose the liens.

■ In this case, Respondents did not know that they were breaching a duty to Appellant since they relied on what they believed was the Association's good standing with the Secretary of State when they imposed the liens. The trial court heard the testimony and found Respondents to be credible. It was not apparent to any citizen, including Respondents, that the Association was not in good standing and that the Secretary of State's office acted without authority when it rescinded the forfeiture of the charter. An ordinary citizen relies upon that certificate of good standing and would have no reason to question such a certificate. See Beavers I, 130 S.W.3d 702, 717 (Mo.App. S.D.2004) (Prewitt, J., dissenting) ("Putting into question the existence of every corporation, notwithstanding a certificate of good standing, may create numerous concerns, including, but not limited to, the validity of conveyances by a corporation."). Because Respondents did not know at the time of the liens that, despite the Association's apparent good standing, it did not have the authority to impose the liens, Respondents did not commit a legal wrong.

Johnson, State ex rel. Moore, and Singer are easily distinguishable. Each of the parties who were held accountable acted contrary to well-established law. In Johnson, there was evidence that defendant bank entered an agreement to sell the stock to the Johnsons, however, it did not sell the actual stock. It then refused to defend when suit was brought against the Johnsons. In State ex rel. Moore, the action was for damages for making a false return. At that time, the action for making a false return was (1) true facts, (2) a misstatement of those facts in the return, and (3) injury resulting from the misstatement of true facts. Douglas v. Hoeh, 595 S.W.2d 434, 437 (Mo.App. E.D.1980). In Singer, Siedband committed a fraud when she fraudulently provided a false date of death to the court and caused harm to Singer; she committed a legal wrong and was held accountable for it.

The trial court did not err in finding that Respondents did not commit a wrong or breach of duty to Appellant when it found they reasonably relied on the Association's good standing when they imposed the liens. As such, the collateral litigation exception does not apply to Appellant's cause

4. The court also made three alternative holdings.

of action and Appellant cannot recover attorney fees and expenses. Points One and Four are denied.[5]

The judgment is affirmed.

LYNCH, C.J., and BURRELL, P.J., concur.

---

**5.** Likewise, since there is no cause of action under the collateral litigation exception, each of Appellant's remaining points of error has no merit.