ROCKY RIDGE RANCH PROPERTY
OWNERS ASSOCIATION, Re-
spondent–Cross Appellant,

v.

AREACO INVESTMENT COMPANY
INC., Appellant–Cross
Respondent.

Nos. 71978, 72022.

Missouri Court of Appeals,
Eastern District,
Southern Division.

May 11, 1999.

Motion for Rehearing and/or Transfer to
Supreme Court Denied June 23, 1999.

Stanley David Schnaare, Hillsboro, for appellant.

Clinton B. Roberts, Tom R. Burcham III, Farmington, for respondent.

LAWRENCE E. MOONEY, Judge.

Areaco Investment Company, Inc., ("Areaco") appeals the trial court's judgment and issuance of a permanent injunction expunging Areaco's amendment to a restrictive covenant regarding the Rocky Ridge Ranch subdivision. On appeal, Areaco argues that: (1) the trial court erred in applying the reasonableness/scheme of development test in determining that the second amendment to the restrictive covenant was unreasonable and would destroy the development scheme of Rocky Ridge Ranch; (2) allowing parol evidence to conclude that paragraph twenty-one of the first amended restrictive covenant was ambiguous; and (3) finding that equity and the intent of the *parties* barred Areaco from voting its lots in order to adopt the Second Amendment to the restrictive covenant.

Rocky Ridge Property Owners [*sic*] Association ("the Owners' Association") cross-appeals, alleging that the trial court erred in finding that: (1) Areaco was entitled to permit access to Rocky Ridge Ranch by "use members" and members of recreation associations; and (2) Areaco was entitled to full possession and control of the subdivision's entrance gate. We affirm in part and reverse and remand in part.

## Facts

Appellant Areaco is the developer of a 2500 acre residential development named Rocky Ridge Ranch, which was created in Ste. Genevieve County in 1966. The development was designed as "a rural residence area of a pioneer type development for permanent and occasional residents, and with provisions for many recreational privileges and facilities . . ." Between 1966 and 1976, Areaco sold approximately 1000 lots at Rocky Ridge Ranch to individual purchasers, who are members of the Respondent Owners' Association.

Rocky Ridge Ranch is governed by a restrictive covenant entitled Original Restriction Agreement ("Original Agreement"), which was created and recorded by Areaco in 1966. Paragraph twenty-one of the Original Agreement provides that the restrictive covenant can be amended as follows:

> The Restriction Agreement may be modified and amended at any time by a suitable instrument executed by the Corporation and two-thirds (⅔) of the then owners of land in Rocky Ridge Ranch and duly recorded in the office of the Recorder of Deeds for Ste. Genevieve County, Missouri.

> In determining the term "then owners," for the purpose of arriving at the total number of owners of land therein, each lot shall be considered as having one owner.

In 1976, the United States Department of Housing and Urban Development ("HUD") prohibited Areaco from selling any additional lots at Rocky Ridge Ranch. After the suspension of lot sales, Areaco began selling to non-lot owners use memberships, which entitle the purchaser to use the Rocky Ridge Ranch facilities for a yearly fee. Areaco also contracted with nationwide organizations, including Coast to Coast and Independent Travel Club Connections, to provide their members access to Rocky Ridge Ranch facilities. The

sale of use memberships allowed Areaco to continue raising revenue despite its inability to sell subdivision lots.

Between 1976 and early 1994, Areaco owned only one-half of the Rocky Ridge lots, far short of the two-thirds required to amend the Original Agreement. However, Areaco platted an additional 1150 lots in 1994, giving the corporation ownership of more than two-thirds of the lots. This additional platting allowed Areaco to unilaterally execute and record a Second Amendment to the Restriction Agreement ("Second Amendment"), supposedly in compliance with paragraph twenty-one of the Original Agreement. The Second Amendment was adopted without notice to or votes from any other Rocky Ridge Ranch property owner.

The Second Amendment makes substantial changes to the Original Agreement that may negatively impact property owners, including the following: (1) allows trailers, tents and other portable housing on lots designated by Areaco; (2) switches responsibility for sewer maintenance from Areaco to lot owners; (3) allows "guests and invitees" who purchased "use memberships" to use Rocky Ridge Ranch common areas; (4) prohibits hunting; (5) eliminates the requirement that fees collected from lot owners be held as part of a maintenance trust, and instead gives Areaco the power to expend those funds in its corporate capacity; (6) provides Areaco the sole power to amend the Original Agreement; (7) gives Areaco the sole right to enforce restrictions, and (8) allows Areaco the right to collect all attorney's and litigation fees necessary to enforce the Second Amendment.

In response to Areaco's unilateral adoption of the Second Amendment, the Owners' Association filed suit on May 31, 1996. On June 7, 1996, the court issued its first temporary restraining order, enjoining enforcement of the Second Amendment and requiring Areaco to allow the Owners' Association to act as the subdivision's trustee. Areaco violated the first court order and was held in contempt on August 5, 1996. The court issued a second temporary restraining order and subsequent preliminary injunction on August 6, 1996, prohibiting Areaco's promotion of Rocky Ridge Ranch as a "drive-thru" park or theme park.

On December 31, 1996, the trial court entered its judgment holding the Second Amendment invalid and expunged, and issued preliminary and permanent injunctions prohibiting Areaco from enforcing the Second Amendment. According to the trial court, "the Second Amendment fails to meet this test of reasonableness and scheme of development." Further, the trial court determined that the parties did not intend that paragraph twenty-one of the Original Agreement be used by Areaco to unilaterally adopt the Second Amendment by platting additional lots.

The trial court also entered a preliminary and permanent injunction against the Owners' Association, prohibiting it from denying Areaco and its guests entrance to or use of Rocky Ridge Ranch facilities, and determining that Areaco was entitled to full possession and control of the subdivision gate. Both Areaco and the Owners' Association appeal this decision.

### Analysis

In a court-tried case, the appellate court will sustain the decree or judgment of the trial court unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). Appellate courts should exercise the power to set aside a decree or judgment on the ground that it is "against the weight of the evidence" with caution, and with a firm belief that the decree or judgment is wrong. *Id.* We accord deference to the trial court for judgments involving construction or enforcement of restrictive covenants. *Forst v. Bohlman*, 870 S.W.2d 442, 445 (Mo.App. E.D.1994).

On appeal, Areaco asks this court to decide whether the reasonableness/scheme of development test should be adopted and applied to determine the validity of the Second Amendment. However, we need not reach this issue, and instead affirm the trial court's decision on the grounds that the parties did not intend for paragraph twenty-one to empower Areaco to unilaterally create the Second Amendment. We find that Areaco's procedure to amend the Original Agreement was nothing more than a poorly concocted voting sham, and therefore hold the resulting Second Amendment invalid.

A restrictive covenant is a private, contractual obligation. *Brentmoor Place Residents Ass'n v. Warren*, 816 S.W.2d 7, 11 (Mo.App. E.D.1991). The rules governing construction of restrictive covenants on realty are generally the same as those applicable to any contract. *Big River Hills Ass'n [ v. Altmann]*, 747 S.W.2d 738, 742 (Mo.App. E.D.1988). Missouri law implies a covenant of good faith and fair dealing in every contract. *Farmers' Elec. Co-op., Inc. v. Mo. Dept. of Corrections*, 977 S.W.2d 266, 271 (Mo. banc 1998).

Areaco breached the covenant of good faith and fair dealing in unilaterally adopting the Second Amendment. Areaco contends that "[t]he intent of the parties to the Restrictions is clear: they intended that the Restrictions be amended by two-thirds of the lot owners. The Restrictions were so amended." We agree that the parties clearly intended that the restrictive covenant could be amended by the vote of two-thirds of the lot owners, but disbelieve that it was the parties' intent that Areaco have the power to become "two-thirds of the lot owners" by platting additional unsellable lots, thereby obtaining the unilateral power to amend the restrictive covenant.

To the contrary, Areaco's agents represented that platting would be limited to 1200 lots. Moreover, Areaco's sole purpose for platting the additional lots was to circumvent the two-thirds voting requirement and thereby give itself the unilateral right to amend the Original Agreement. Agnes Herzog, an Areaco employee, testified that Areaco's president admitted to her that he only platted the 1150 lots in order to gain the unilateral right to amend the restrictive covenant. Her testimony is supported by the fact that HUD prohibited Areaco from selling lots at Rocky Ridge Ranch in 1976. As a result, even Areaco's president admitted that it would be impossible, unprofitable, and impractical for Areaco to comply with HUD's requirements, a necessary condition to the sale of the additional 1150 lots. Thus, Areaco had no reason to plat the additional, unsellable lots except to create a voting sham designed to give Areaco the unilateral right to amend the restrictive covenant.

Based on the foregoing facts, Areaco's actions were nothing more than a devious attempt to circumvent the two-thirds vote of lot owners required to amend the Original Agreement and to give the sole amendment power to Areaco. We find that the voting scheme contravenes the implied covenant of good faith and fair dealing, and that the Second Amendment, which is a product of the unreasonable voting scheme, is invalid.

### *"Use Members" Access to Rocky Ridge Ranch and Control of the Subdivision's Gate*

In its cross-appeal, the Owners' Association contends that the trial court erred both in entering injunctions prohibiting the Owners' Association from denying Areaco's "guests and invitees" access to Rocky Ridge Ranch, and in finding that Areaco was entitled to full possession and control of the subdivision's gate.

The evidence indicates that as early as 1976, Areaco began to contract with and sell use memberships to individual purchasers and nationwide organizations and groups, including Independent Travel Club Connections and Coast to Coast, which

entitled them to use Rocky Ridge Ranch facilities. However, neither the purchasers of use memberships, nor the nationwide organizations, were joined as parties to the lawsuit.

Under Rule 52.04, the individual purchasers of use memberships, as well as the nationwide travel organizations, are necessary parties to the present lawsuit because they presumably claim an interest in gaining and retaining the right to access Rocky Ridge Ranch facilities. Therefore, the trial court erred in rendering judgment without their joinder. Thus, we reverse and remand this issue to the trial court for further proceedings consistent with this opinion.

Moreover, because the trial court's determination with respect to control of the subdivision's gate is so interrelated to the previous issue, in that both involve the access of Areaco and its guests and invitees to Rocky Ridge Ranch, we also reverse and remand the issue of control of the subdivision's gate to the trial court.

Thus, the trial court's judgment issuing a permanent injunction prohibiting Areaco from enforcing the Second Amendment is affirmed; the judgment with respect to access of Areaco's guests and invitees to Rocky Ridge Ranch and control of the subdivision's gate is reversed and remanded for further proceedings consistent with this opinion.

AHRENS, P.J, and JAMES R. DOWD, J., concur.