**VALLEY VIEW VILLAGE SOUTH IMPROVEMENT ASSOC., INC.,**
Plaintiff–Respondent,

v.

**Jarrell BROCK, et al., Defendants–Respondents,**

and

**P. Douglas Associates, LLC,**
Intervenor–Appellant.

No. SD 28780.

Missouri Court of Appeals,
Southern District,
Division Two.

Jan. 14, 2009.

Richard L. Schnake, Springfield, for Appellant.

Randy S. Anglen, Branson, for Respondent Valley View Village South Improvement Assoc., Inc.

Jarrell Brock and Janice Brock, pro se.

Stephen T. Wilson, Cape Girardeau, pro se.

NANCY STEFFEN RAHMEYER, Judge.

In 1974, a developer, Valley View Village South, Inc., acquired land, created a subdivision and recorded a plat of land that is the subject of this dispute. In 1975, the developer recorded a Declaration of Covenants, which provided for establishment of a property owners' association known as Valley View Village South Improvement Association, Inc.; that association was incorporated as a Missouri nonprofit corporation on July 1, 1975. At the time of trial, the original developer and the original property owners' association no longer existed. The development changed hands multiple times but the current owner of the unsold lots is not the assignee or successor of the original developer. Likewise, the current property owners' association, formed in 2002, was not an assignee of the original property owners' association but rather was incorporated after the original association's charter was forfeited in 1985. We, therefore, have two parties with an interest in the current subdivision who have no direct ties to the original developer and property owners' association.

A dispute arose between these parties over what had been designated by the original developer as common areas, more specifically, the water system. During the period of time after the original developer was no longer involved in the property, certain property residents managed the water system for the subdivision. The subdivision residents became very concerned about issues occurring within the subdivision and organized a meeting to form a property owners' association. Stephen Wilson, on behalf of the association, tried to reactivate the original corporate association, but its charter could no longer be reinstated because Missouri statutes at that time provided for a ten-year limit on the time within which a dissolved nonprofit corporation could be revived. On May 10, 2002, the association was incorporated as Valley View Village South Improvement Association ("Respondent"), almost identical in name to the original association provided for in the Declaration of Covenants with the exception of "Inc." not being included in the full name.[1]

At the time of trial, there were nineteen structures, four of which were duplexes, with connections to water meters. The owners of these structures are the active participants of Respondent. Maureen and Stephen Wilson "collect[ed] monies from the other homeowners for the purposes of ... association fees, dues, assessments" on behalf of Respondent and maintained the water system.

After Respondent was incorporated, it brought suit against the Brocks and the Rushes.[2] Count I sought a declaration

---

1. When Respondent filed its Petition, it correctly identified itself; however, in subsequent pleadings, such as the Second Amended Petition, and eventually in the First Amended Judgment, Respondent was mistakenly identified by the name of the original association by including "Inc." in its name. Also, Stephen Wilson's testimony that the name he incorporated Respondent under was the same "as the name of the organization listed under association in the original covenants" was inaccurate. We make note of this error to clarify that the first and second associations were not the same entity.

2. Respondent claimed that the Brocks, residents of the subdivision, were interfering in the water system and common areas of the subdivision and placed a trailer home on property located within the subdivision, which was in violation of restrictive covenants. Respondent claimed the Rushes, as the record owner of much of the subdivision and successor to the original developer, may have an interest in the rights and relations

"that [Respondent] is the rightful administrator and owner of the water system to the Valley View South Subdivision, that it is the duly authorized [homeowners'] association for the subdivision, and owner of all records, property and assets of said association." Count II sought an injunction to prohibit the Brocks from "having any contact with the water system of Valley View Village South Subdivision, to cease and desist from trying to exercise any control over the system, [and] to stop living in the common areas[.]"

While the suit was pending, P. Douglas Associates, LLC ("Appellant"), bought approximately 120 acres of land in the subdivision and became a party in this dispute. The land bought by Appellant included the subdivision clubhouse, approximately four acres surrounding it, and a golf course. Except for the distribution pipes, the water system for the subdivision was located entirely on the clubhouse property. The well of the subdivision was on the clubhouse grounds, and the water storage tanks and chlorination system were in the clubhouse basement. Appellant owned 164 lots and 18 condominium units, for a total of 182 units.[3]

Appellant sued Respondent, Stephen Wilson, as an officer and director of Respondent, and two other individuals, who claimed to be directors of Respondent, seeking a declaration of Appellant's rights under Respondent's bylaws and an injunction prohibiting Stephen Wilson and the individuals from acting as officers or directors of Respondent. Respondent filed a Second Amended Petition with the same claims with Appellant as a defendant. Appellant also sued Stephen Wilson personally for breach of fiduciary duty, slander of title, and accounting. Subsequently, Respondent dismissed Appellant from the suit against the Brocks, but Appellant intervened. The court ordered all the cases consolidated.

The trial court held, in its First Amended Judgment, among other things, that (1) Respondent was the valid homeowners' association for Valley View Village South Subdivision and held all of the rights, privileges and responsibilities declared in the 1975 Declaration of Covenants; (2) Respondent was the owner of the water system and was the sole entity entitled to control, maintain, administer and collect for the water system; (3) Appellant was enjoined from interfering with Respondent's right to control, administer and maintain the water system; (4) Respondent had an easement to access the water tanks, pump, well and distribution system on all properties owned by any parties to this action; (5) Respondent's members were entitled to use, at a reasonable fee, the clubhouse, tennis courts and golf course, which were the common areas mentioned in the Declaration of Covenants; (6) Appellant was not the successor developer and did not possess developer rights to the subdivision; and (7) Appellant was an individual member of Respondent entitled to one vote per lot but was not in good standing entitled to vote due to non-payment of dues and assessments.

Appellant brings four points on appeal. The first point is dispositive and controls the remaining points on appeal;[4] it chal-

---

regarding the water system and common areas.

3. As a result of Appellants' ownership of 182 units, an assessment in the amount of $18,200.00 was levied against Appellant by Respondent under the homeowners' association bylaws.

4. There is no appeal from any adverse judgments against Appellant in the suit against Stephen Wilson individually.

lenges the court's finding that Respondent was the "proper, valid homeowners' association" for the subdivision and holder of all the rights, privileges and responsibilities declared in the original Declaration of Covenants. Appellant contends there is no continuity between Respondent and the original property homeowners' association because the original association's charter was forfeited, could not be reinstated more than ten years after the forfeiture and there was no evidence of any connection between the original association and Respondent. Appellant's first point has merit.

■ There was not and cannot be any dispute that the original property owners' association no longer exists. Respondents do not argue to the contrary, but argue that *Pioneer Point Homeowners Association, Inc. v. Booth*, 179 S.W.3d 397 (Mo. App. S.D.2005), is applicable. In *Pioneer Point*, this Court decided whether a second homeowners' association, which had been assigned all the rights, title and interest, could enforce the rules and restrictions according to the original Statement of Reservations. *Id.* at 400. Interestingly, in *Pioneer Point*, the original homeowners' association charter had been forfeited and not reinstated. *Id.* at 399. This Court held:

> Because there has been no challenge to the validity of the assignment between Homeowners Association I and II, and because we have found nothing to suggest that such assignments are disfavored in the law, we cannot say that the trial court erroneously applied the law in holding that Homeowners Association II was the appropriate entity to enforce the Statement of Reservations, and has

the authority to make assessments and/or file liens.

*Id.* at 403.

We are now faced with *Pioneer Point*, one step removed. Here, we have a completely new corporation, called by a very similar name and following the same by-laws as set forth in the original covenant, but without any assignment, which has been deemed a "successor" property owners' association by the trial court. Respondent argues that the rationale of *Pioneer Point* controls, that a ruling that it cannot be a successor would leave the subdivision with no homeowners' association even though the original developer intended that there be one. Respondent further maintains that though the original association could not be resurrected, it could be re-incorporated; it claims that under the plain language of the Declaration of Covenants, the second association could be the proper homeowners' association. Respondent avers that a notice was sent to every record owner in the subdivision and the landowners formed the homeowners' association and notes that some of the members in the second association were also members in the first.

Appellant counters that *Pioneer Point* is not persuasive authority because the assignment was not challenged in that case; instead, Appellant claims *Beavers v. Recreation Association of Lake Shore Estates, Inc.*, 130 S.W.3d 702 (Mo.App. S.D.2004) controls. In *Beavers*, a homeowner attacked the right of a homeowners' association to levy assessments because the association was a "pretended corporation with no actual existence" in that the corporate charter had been forfeited but unlawfully reinstated outside the then ten-year period in which the forfeiture could be rescinded under section 355.507.4.[5] *Id.* at 708–09.

5. All references to statutes are to RSMo 2000, unless otherwise specified.

We held that the homeowners' association was neither a corporation de jure nor a corporation de facto and could be attacked by private individuals. *Id.* 711–12. We further found that the association had no legal right to make any assessments or to place liens on the property owner. *Id.* at 717.

We now likewise hold that Respondent was not a valid successor homeowners' association for Valley View Village South Subdivision and does not hold all the rights, privileges and responsibilities declared in the original Declaration of Covenants. We cannot create an assignment where none was made, nor can we create a legal obligation where none was agreed to by Appellant. It is Respondent who contended that Appellant did not have the rights of the original developer because there was no assignment. The same is true for Respondent. Although the current homeowners certainly have the right to create an association of homeowners, they do not have the legal right to bind Appellant with their association decisions absent Appellant's acquiescence. As such, Respondent had no authority to levy Appellant with assessments, including the special assessment of $18,200.00. Appellant's first point is granted, as is its fourth point, which challenges the $18,200.00 assessment.

■ Additionally, our holding that Respondent was not a valid successor homeowners' association necessitates a reversal of the trial court's finding concerning the water delivery system. Appellant's second and third points challenge the trial court's ruling that Respondent owns the water system, by granting it an easement over Appellant's property, by enjoining Appellant from interfering with its control of the water system and by ordering Appellant to give Respondent funds for the water service. The homeowners' association has no ownership interest in the water system by way of an easement, in controlling the water system or access to funds for the water system. As noted, this suit was by a homeowners' association. In holding that Respondent does not own the water system and is not entitled to control the water system or access funds for the water system, we do not address whatever right an individual owner may have the reasonable right to have water supplied.[6]

In reaching this conclusion, it is significant to note, for instance, the individual members have a right and easement of enjoyment to all the common properties; however, the developer retained the legal title to the common property until such time as in the opinion of the developer, the association was able to maintain the same. The problem with the trial court's order in this case is that there was absolutely no evidence that any of the "common areas" were ever deeded to any association, nor was there evidence that the water system, specifically, was in the common area. Furthermore, because Respondent is not the association of the entire development (indeed, there is no developer or development now), it has no rights in the areas designated as "common areas."

Respondent argues that in the Declaration of Covenants, the association had the right to contract with utility companies to operate its own utility company and "to grant and release easements and rights-of-way through, over and across the common properties for the installation, maintenance and inspection ... of lines for public water...." Actually, the right to grant easements and rights-of-way was the right of the developer and the association. The

6. *See Mulrooney v. Obear,* 171 Mo. 613, 71 S.W. 1019, 1021 (Mo.1903), for a discussion of the factors used to determine the ownership of meters and supply pipes.

original association did have the right to contract for the utilities, but not until it was the owner of the property. The association was never given the property by the developer.

Respondent reasons that the clear intent of the developer was that the association would own the common areas because the declaration made two classes of members, the first for landowners and the second for the developer. The two classes of membership were to terminate no later than December 31, 1999. We do not doubt that the Declaration evidences an intent at some time in the future to have the association own and maintain all of the common areas, including the water system. The weakness in Respondent's position is the finding that Appellant was not a successor developer. The court found that Appellant was not the "successor developer"; that finding is unchallenged in this appeal by either party. Therefore, the cases cited by Respondent holding that a homeowners' association may pursue an action against a successor developer for promises and intentions of the original developer do not assist Respondent.

If Appellant was the successor developer, he would have had duties to individual property owners or to a valid homeowners' association in the subdivision as set forth in the Declaration of Covenants but Appellant would have had rights. The judgment denied it the rights of a developer. The court expressly enjoined Appellant from representing to others that it was a "developer" of the Valley View Village South Subdivision or even to change the name of the subdivision. The court further enjoined Appellant from using the clubhouse in the common area and from maintaining the water system that was on Appellant's property. Each of the actions of the court challenged by Appellant was in error; points two and three are also granted.

The judgment is reversed and remanded for further proceedings consistent with this opinion.

PARRISH, J., BURRELL, P.J., concur.