

# SUPREME COURT OF MISSOURI
## en banc

THE ARBORS AT SUGAR CREEK      )
HOMEOWNERS ASSOCIATION,      )
ET AL.,      )
     )
         Appellants/Cross-Respondents,      )
     )
     v.      )      No. SC94693
     )
JEFFERSON BANK & TRUST CO., INC,      )
     )
         Respondent/Cross-Appellant,      )
     )
     and      )
     )
MCKELVEY HOMES, LLC,      )
     )
         Respondent.      )

### APPEAL FROM THE CIRCUIT COURT OF ST. LOUIS COUNTY
### THE HONORABLE GLORIA C. RENO, JUDGE

*Opinion issued June 30, 2015*

The Arbors at Sugar Creek ("the Arbors") is a subdivision in Des Peres, Missouri. Evolution Development LLC ("Evolution") purchased the land to create the Arbors through loans provided by Jefferson Bank & Trust Company ("Jefferson Bank"). Evolution built and sold homes on five of the 18 lots in the Arbors. Prior to building the first home, Evolution recorded a Declaration of Covenants, Conditions and Restrictions ("Indenture") to run with the land. Pursuant to that Indenture, Evolution also established a homeowners association to govern the Arbors. Part of the homeowners association's

responsibility was ensuring that homes built in the Arbors met certain standards, described in the Indenture.

During the financial crisis, Evolution declared bankruptcy and Jefferson Bank foreclosed. Prior to the bankruptcy, Evolution had failed to file the proper paperwork with the Missouri Secretary of State, and the homeowners association was administratively dissolved. After the foreclosure, Jefferson Bank partnered with McKelvey Homes, LLC ("McKelvey") to finish building homes on the remaining 13 lots in the Arbors. The existing homeowners deemed those building plans in violation of the Indenture and established a replacement homeowners association, The Arbors at Sugar Creek Homeowners Association ("plaintiffs' HOA"), in an effort to stop McKelvey from building. Once created, the homeowners expelled Jefferson Bank from the association, and issued a statement to McKelvey that its homes were not in compliance with the Indenture.

After being expelled from the plaintiffs' HOA, and obtaining the declarant rights from Evolution, Jefferson Bank sent notice to all the lot owners of the Arbors and called a meeting to establish a separate homeowners association, The ASC Homeowners Association, Inc. ("ASC HOA"). Jefferson Bank, as owner of 13 of 18 lots, used its majority position to make ASC HOA the authorized homeowners association of the Arbors and elect its board. The homeowners refused to participate in the authorization or election. Jefferson Bank also used its majority share to amend the requirements of board membership of the ASC HOA, and the board approved McKelvey's building plans, as required by the Indenture.

The homeowners filed suit against McKelvey and Jefferson Bank seeking declaratory and injunctive relief as well as alleging claims of damages against Jefferson Bank and McKelvey.[1]  Jefferson Bank filed a three-count counterclaim petition also seeking declaratory relief and damages against the homeowners.[2]  The plaintiffs and Jefferson Bank filed motions for summary judgment.  The circuit court granted summary judgment in favor of the plaintiffs on Counts II and III of Jefferson Bank's counterclaim petition, and in favor of Jefferson Bank and McKelvey on Counts II-V of plaintiffs' petition.  The circuit court then held a trial on the issue of declaratory relief.  After trial, the circuit court granted declaratory relief in favor of Jefferson Bank and McKelvey.  Jefferson Bank also filed a motion for reimbursement for expenses it had incurred in upkeep of the Arbors, which the circuit court sustained.

The homeowners appealed, and Jefferson Bank cross-appealed.  The circuit court did not err in its grant of summary judgment in favor of plaintiffs on Counts II and III of Jefferson Bank's counterclaim petition.  Nor did the circuit court err in granting summary judgment in favor of Jefferson Bank and McKelvey on counts II-V of plaintiffs' petition.  However, the circuit court did err in sustaining Jefferson Bank's motion for

[1] Plaintiff's fourth-amended petition had five counts.  Count I sought a declaratory judgment and injunction against Jefferson Bank and McKelvey, alleging that Jefferson Bank and McKelvey had violated the Indenture governing the lots at the Arbors in multiple ways, and seeking removal of the house that was being constructed by McKelvey.  The remaining claims sought damages under the following theories: Count II—breach of fiduciary duty solely against Jefferson Bank; Count III—civil conspiracy against Jefferson Bank and McKelvey; Count IV—tortious interference against Jefferson Bank and McKelvey; and Count V—nuisance against Jefferson Bank and McKelvey.

[2] Jefferson Bank's counterclaim consisted of: Count I—Declaratory relief in favor of Jefferson Bank and McKelvey that the Indenture was not violated by McKelvey's business plan or Jefferson Bank's actions in amending the Indenture; Count II—Slander of Title; and Count III—Abuse of Process.  Counts II and III were claims for damages stemming from the filing of a lis pendens by plaintiffs when they filed their original petition.

reimbursement. The circuit court's judgment granting declaratory relief in favor of Jefferson Bank is based on substantial evidence, was not against the weight of the evidence, and did not err in applying or declaring the law. The judgment is affirmed in part and reversed in part.

## Factual Background

The Arbors consists of 18 lots and common ground located in Des Peres, St. Louis County, Missouri. Evolution began its work in the Arbors in late 2005. Jefferson Bank loaned money to Evolution to develop the Arbors and secured those loans by a deed of trust. The Arbors is governed by an Indenture that was recorded by Evolution, with the consent of Jefferson Bank, and that runs with the land. The Indenture required the creation of a homeowners association. Evolution created The Arbors at Sugar Creek Homeowners Association, Inc., ("original HOA") and initially filed the proper paperwork with the Secretary of State of Missouri. However, Evolution never appointed board members or had any meetings of the original HOA. Later, the original HOA was administratively dissolved by the Secretary of State for failure to file its annual statements.

After the administrative dissolution of the original HOA, Evolution went bankrupt as a result of the financial crisis. Jefferson Bank foreclosed and took control of the remaining 13 undeveloped lots in the Arbors. Jefferson Bank then sought bids from multiple developers to complete the Arbors. Jefferson Bank's primary focus was to find a financially sound developer that would purchase all 13 lots. Jefferson Bank eventually

4

agreed to terms with McKelvey, and the two entered into an option agreement for the purchase of the 13 lots.

The plaintiffs disagreed with the selection of McKelvey as the developer. Recognizing the Indenture required the homeowners association to approve McKelvey's plans before building could begin, the plaintiffs established plaintiffs' HOA. Prior to submission of any home plans the plaintiffs objected generally to any home that McKelvey might build in the Arbors and filed their original petition for declaratory and injunctive relief. The plaintiffs also filed a lis pendens to notify the public of the pending suit.

Meanwhile, Jefferson Bank obtained an assignment of rights from Evolution and called a meeting of all the lot owners. The Indenture provided, in article 6.1(c), that "Each Owner's vote in the Association for all purposes shall be allocated on an equal basis, i.e., the Owner of each Lot having one vote." At the meeting, Jefferson Bank voted its 13 shares in favor of creating ASC HOA, and authorized it to be the official homeowners association for the Arbors. The plaintiffs refused to participate in the vote. Jefferson Bank then voted to appoint members to the board of ASC HOA. After offering one of the three positions to the plaintiffs, which was refused, Jefferson Bank appointed three of its employees to the ASC HOA board. Jefferson Bank later voted its shares to amend the Indenture to remove the requirement that only residents of the Arbors could serve on the board of ASC HOA. Jefferson Bank then filed a motion for partial summary judgment that ASC HOA was the authorized homeowners association for the Arbors. The circuit court granted that motion for summary judgment.

Pursuant to the Indenture, all new homes had to be approved by the board of the ASC HOA to ensure that those homes were in compliance with Article X of the Indenture. Article X of the Indenture is titled, "Architectural Covenants and Design Review." Its purpose statement provides, "This Article contains a procedure for review and approval of exterior alterations of the original design of the buildings and Units. The purpose of this review is to maintain the uniform quality and aesthetics of exterior architectural design for the best interests of the Community as a whole." After hiring an independent architect to review McKelvey's home plans for compliance with Article X, and reviewing McKelvey's home plans itself, the ASC HOA approved McKelvey's home plans.

The plaintiffs then filed their fourth-amended petition. Plaintiffs' petition sought declaratory and injunctive relief that the Indenture, and specifically Article X, had been violated. They also sought damages against Jefferson Bank and McKelvey for breach of fiduciary duty, civil conspiracy, tortious interference, and nuisance. Jefferson Bank filed a three-count counterclaim petition seeking a declaratory judgment in its favor and damages against the plaintiffs for slander of title and abuse of process because of the lis pendens filed by plaintiffs. The circuit court granted summary judgment in favor of plaintiffs on counts II and III of Jefferson Bank's counterclaim petition and in favor of Jefferson Bank on counts II-V of plaintiffs' petition. The circuit court also held a trial on the issue of which party was entitled to declaratory relief. After trial, the circuit court entered judgment in favor of Jefferson Bank and McKelvey. Jefferson Bank also filed a motion for reimbursement after trial that was sustained by the circuit court. The motion

sought reimbursement in the amount of $418.27 from McKelvey and each of the plaintiffs.

The plaintiffs appealed both summary judgments in favor of Jefferson Bank and McKelvey and the circuit court's entry of judgment granting declaratory judgment to Jefferson Bank and McKelvey. Jefferson Bank cross-appealed the circuit court's grant of summary judgment in favor of the plaintiffs on its claims for slander of title and abuse of process. After opinion by the court of appeals, this Court granted transfer. Mo. Const. art. V, § 10.

## Standard of Review

This Court reviews a grant of summary judgment *de novo*. *Goerlitz v. City of Maryville*, 333 S.W.3d 450, 452 (Mo. banc 2011). "Summary judgment is only proper if the moving party establishes that there is no genuine issue as to the material facts and that the movant is entitled to judgment as a matter of law." *Id*. The Court views factual assertions in the light most favorable to the non-movant and draws all reasonable factual inferences in the non-movant's favor. *Id.* at 453. Summary judgment may be affirmed on any appropriate theory supported by the record. *Columbia Cas. Co. v. HIAR Holding, L.L.C.*, 411 S.W.3d 258, 264 (Mo banc 2013).

This Court reviews a declaratory judgment action "the same as in any other court-tried case." *Rouner v. Wise*, 446 S.W.3d 242, 248-49 (Mo. banc 2014). The circuit court's judgment will be affirmed "unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law." *Id.* at 249 (internal citations and quotations omitted).

7

**Analysis**

The principles of contract law apply when interpreting an Indenture. *DeBaliviere Place Ass'n v. Veal*, 337 S.W.3d 670, 676 (Mo. banc 2011). Specifically, this Court seeks to give effect to the parties' intent. *Id.* When a contract is unambiguous, the intent of the contract is discerned solely from the contract's language. *Id.* at 676-77.

The homeowners raise six points on appeal arguing the circuit court erred in denying declaratory relief and in granting summary judgment in favor of Jefferson Bank and McKelvey on the issue of the ASC HOA being the proper homeowners association of the Arbors, and on their claims for damages. The homeowners do not argue there are any genuine issues of material fact in their dispute of the circuit court's granting of summary judgment in favor of Jefferson Bank. Rather, the homeowners allege the circuit court misapplied the law in its decisions. Jefferson Bank cross-appeals the circuit court's grant of summary judgment on its claims for damages against plaintiffs.

**Homeowners' Points on Appeal**

**A. ASC was the Proper Homeowner's Association for the Arbors**

The homeowners argue that the circuit court erred in granting summary judgment because Missouri law requires a successor homeowners association to receive an assignment from the original association created pursuant to the Indenture in order to govern. For support, homeowners rely on *DeBaliviere Place Ass'n*, 337 S.W.3d 670, and *Valley View Village South Improvement Ass'n, Inc. v. Brock*, 272 S.W.3d 927 (Mo. App. 2009).

8

In *DeBaliviere Place*, a new homeowners association was formed in 2003 to govern a subdivision called DeBaliviere Place. 337 S.W.3d at 672-73. That new homeowners association billed Veal for general assessments for each of his units in the subdivision. *Id.* at 673. However, the new homeowners association did so prior to receiving an assignment of rights from the former homeowners association's president. *Id.* This Court held that only those assessments made after the assignment of rights were valid. *Id.* at 679.

In *Valley View*, a successive homeowners association was formed by members of the Valley View Village subdivision and, in the process, charged other landowners in the subdivision assessments. 272 S.W.3d at 928-29. The successive homeowners association sued Jarrell and Janice Brock and P. Douglas Associates, LLC. *Id.* P. Douglas Associates, LLC, challenged the validity of the homeowners association to make assessments because it had not received an assignment of the "rights, privileges, and responsibilities declared in the original [Indenture]." Id. at 930. Although the association was formed with a nearly identical name, unlike in *Veal*, it received no assignment of rights, from either the developer or the original homeowners association. *Id.* at 931. The court of appeals held that because there had not been an assignment of rights to the successive homeowners association, it had no rights that allowed it to make assessments. *Id.*

Article 3.1 of the Indenture required the creation of a homeowners association "not later than the first conveyance of title to a Lot." While Evolution created Sugar Creek HOA, it was administratively dissolved by the state and was incapable of revival when

9

the events that began this litigation took place. Unlike in *DeBaliviere* and *Valley View*, there is a provision of the Indenture, in this case, allowing for amendment. Article 12.1(b) provides:

> (b) By Owners. Subject to Articles IX and X, and as otherwise provided herein, this [Indenture], including the Plat, **may be amended only by vote or agreement of the Owners of Lots to which sixty-seven percent (67%) of the votes in the Association are allocated.** No amendment may remove, revoke, or modify any right or privilege of the Declarant so long as Declarant's rights under Article X have not been fully exercised, without the written consent of Declarant. No such amendment shall reduce or modify the obligation of the Association with respect to maintenance or the power to levy assessments therefor [sic], or to eliminate the requirement that there be an Association and Board unless adequate substitution is made, without the written consent of the Director of Planning of the City of Des Peres.

(Emphasis added). Jefferson Bank owned 13 of 18 lots (72%) at the time it amended the Indenture to make ASC HOA the official homeowners association of the Arbors. The language of the Indenture allows for the substitution of Sugar Creek HOA with ASC HOA because the substitution was approved by 72% of the eligible voters; therefore, the circuit court properly granted summary judgment in favor of the defendants.

### B. The Limitation on ASC HOA Board Membership was Properly Eliminated Through Amendment of the Indenture

Article 3.5(a) of the Indenture governs qualifications and election of board members to the homeowners association. It requires that "an Owner shall be a Member in Good Standing who is a resident of the Community" to be a director. There is no dispute that the members of Jefferson Bank that served on the ASC HOA were not residents. Jefferson Bank once again used its 72% share in the subdivision to amend Article 3.5(a) to remove the residency requirement. The homeowners argue on appeal

10

that this amendment was ineffective because it violated Jefferson Bank's duty of good faith and fair dealing, and the amendment amounted to a "new restriction" requiring unanimous approval to be valid.[3]

### i. Jefferson Bank did not Violate its Duty of Good Faith and Fair Dealing

As previously stated, the principles of contract law apply when interpreting an Indenture. *DeBaliviere Place Ass'n*, 337 S.W.3d at 676. Under Missouri law, a duty of good faith and fair dealing is implied in every contract. *Farmers' Elec. Co-op., Inc. v. Missouri Dep't. of Corr.*, 977 S.W.2d 266, 271 (Mo. banc 1998). However, "'there can be no breach of the implied promise or covenant of good faith and fair dealing where the contract expressly permits the actions being challenged, and the defendant acts in accordance with the express terms of the contract.'" *City of St. Joseph v. Lake Contrary Sewer Dist.*, 251 S.W.3d 362, 371 (Mo. App. 2008) (quoting 23 Samuel Williston & Richard A. Lord, A Treatise on the Law of Contracts § 63.22 at 516 (4th ed. 2002)); see also *Al-Khaldiya Elec. Equip. Co. v. Boeing Co.*, 571 F.3d 754 (8th Cir. 2009); *State v. Nationwide Life Ins. Co.*, 340 S.W.3d 161, 194 (Mo. App. 2011); *Bishop v. Shelter Mut. Ins. Co.*, 129 S.W.3d 500, 505 (Mo. App. 2004). The plaintiffs rely on *Rocky Ridge Ranch Prop. Owners Ass'n v. Areaco Inv. Co.,* 993 S.W.2d 553 (Mo. App. 1999), in support of their position that Jefferson Bank violated its duty of good faith and fair dealing.

---

[3] The circuit court determined the period of declarant control, defined in Article 3.5(b)(1), had not expired; therefore, Jefferson Bank could appoint members to the board as declarant. Because the amendment eliminating the residency requirement from board requirements was proper, this Court need not address this issue.

In *Rocky Ridge*, a developer of a residential development sold nearly 1000 lots to individual purchasers who were members of the owners' association. The owners' association was governed by a restrictive covenant. The restrictive covenant could be modified and amended "at any time by a suitable instrument executed by the Corporation and two-thirds (2/3) of the then owners of land in Rocky Ridge . . . for the purpose of arriving at the total number of owners of land therein, each lot shall be considered as having one owner." *Id.* at 554. After a period of time, the developer controlled approximately half the lots but wished to amend the Indenture. In an effort to obtain the two-thirds lot ownership interest it needed, the developer plotted an additional 1150 lots on the land it already owned. The developer then amended the covenant "without notice to or votes from any other Rocky Ridge Ranch property owner." *Id.* at 555. The court of appeals held this violated the duty of good faith and fair dealing and voided the amendment. *Id.* at 556.

There was no subterfuge by Jefferson Bank in this case. It provided fair notice and held discussion about the amendment. Further, Jefferson Bank did not divide up the lots it owned to create the illusion that it had a 67% interest in the subdivision that would allow it to amend the Indenture. The terms of the Indenture were followed in good faith. The express terms of the Indenture allowed for amendment by a vote of 67% of the lot owners, negating that implied responsibility for amendments to the Indenture. The

plaintiffs' comparisons to *Rocky Ridge* are unpersuasive, and the circuit court did not err in granting summary judgment to Jefferson Bank on the issue of amendment.[4]

### ii.  The Amendment did not Require Unanimous Approval

The homeowners argue they were deprived of a "right of self-governance," the removal of which requires unanimous approval, under Missouri law.  In support, homeowners cite three cases from the court of appeals: *Harris v. Smith*, 250 S.W.3d 804 (Mo. App. 2008); *Webb v. Mullikin*, 142 S.W.3d 822 (Mo. App. 2004); and *Bumm v. Olde Ivy Dev., LLC*, 142 S.W.3d 895 (Mo. App. 2004).  None of these cases provide support for the homeowners' argument that the amendment to the residency requirement required unanimous approval of the lot owners.

In *Harris*, a subdivision was governed by a set of restrictive covenants.  250 S.W.3d at 806.  Those covenants regulated the size of outbuildings that could be placed on property within the subdivision.  *Id.*  Later, 13 out of 15 lot owners decided to repeal the covenants; however, the lot owners of 6-10, with the approval of 13 of 15 lot owners, recorded a "supplement" to the declarations stating lots 6-10 still wished to be governed by the restrictive covenants on outbuildings.  *Id.* at 807.  Additionally, the supplement further restricted the type of outbuilding that could be placed within the lots.  *Id.*  The

---

[4] Judge Teitelman's dissent argues Jefferson Bank and McKelvey violated the duty of good faith and fair dealing inherent in the Indenture.  The argument that Jefferson Bank and McKelvey failed to act in good faith goes against the factual findings of the circuit court that, "In amending the Indenture to eliminate the residency requirement, Jefferson Bank did not engage in any sham or manipulation to acquire the requisite number of lots to amend the Indenture.  It acted in good faith.  It followed the express provisions of the Indenture."  It is not this Court's prerogative to reevaluate factual findings made by the circuit court in a court-tried case.  *J.A.R. v. D.G.R.*, 426 S.W.3d 624, 627 (Mo. banc 2014).

court of appeals, citing this Court's decision in *Van Deusen v. Ruth*, 125 S.W.2d 1 (Mo. 1938), held this constituted a "new restriction" requiring unanimous approval. *Id.* at 810.

In *Bumm*, a subdivision was governed by a restrictive covenant. 142 S.W.3d at 897. One of the lot owners of the subdivision was attempting to replat and develop the lots inside the subdivision. *Id.* at 898. The lot owner's representative presented an amendment to the covenants that would remove the redesignated land from the restrictive covenants, however, this failed to pass. *Id.* Afterward, a majority of the lot owners of the affected land passed two new covenants that did not allow land to be "replatted" and put new architectural restrictions on buildings on the land. *Id.* at 898-99. The court of appeals held these were new restrictions that required unanimous approval and were void. *Id.* at 904-05.

In *Webb*, a subdivision had restrictive covenants that allowed the trustees of the subdivision to make assessments against members of the subdivision. *Id.* at 824. The subdivision also contained a bath and tennis club that residents were eligible, but not required, to join. *Id.* The bath and tennis club was in need of improvements that were beyond what it could afford. *Id.* The club contacted the trustees, who proposed an amendment to the restrictive covenants that would cause all lot owners to be assessed $50 every year for maintenance of the club. *Id.* at 824-25. The lot owners who disapproved of the amendment sued, and the court of appeals held that the amendment constituted a new restriction requiring unanimous approval. *Id.* at 828.

Contrary to the homeowners' arguments, none of the cases cited lend support to their argument. All of the court of appeals' decisions involve issues of new restrictions

14

being placed on land within a subdivision governed by a restrictive covenant, or additional fees being imposed on lot owners within a subdivision governed by a restrictive covenant. Jefferson Bank, in this instance, actually *removed* a restriction; that members of the board of directors had to be residents. The homeowners' argument that this amendment constituted a restriction on their "right of self-governance" is without merit or precedent.

## C. Circuit Court Properly Granted a Declaratory Judgment in Favor of Jefferson Bank and McKelvey[5]

The homeowners argue the circuit court erred in deferring to the ASC HOA board's decisions in entering declaratory judgment in favor of Jefferson Bank and McKelvey because those decisions were not reasonable, and the circuit court erroneously applied the law in deciding it had to defer to the ASC HOA board. This Court defers "to the trial court's assessment of the evidence if any facts relevant to an issue are contested." *Pearson v. Koster*, 367 S.W.3d 36, 44 (Mo. banc 2012). The circuit court determined, based on the evidence, that the ASC HOA board's decisions were reasonable and in good faith. That decision is supported by substantial evidence, is not against the weight of that evidence, and does not erroneously declare the law. *Rouner*, 446 S.W.3d at 248-49.

The circuit court was presented with four days' worth of evidence and made these findings that counter homeowners' arguments that the ASC HOA's board decisions were not reasonable:

---

[5] The homeowners acknowledge in their pleadings that, if the circuit court's decision granting declaratory relief to Jefferson Bank and McKelvey is affirmed, their claims regarding damages are moot. Because this Court finds the circuit court did not err in entering declaratory judgment in favor of Jefferson Bank and McKelvey, this opinion does not address the points dealing with homeowners' damages claims.

39. Members of the board, Mr. Dulle and Mr. Ross, apprised themselves of the facts concerning the Komolos Home. They reviewed plans. They reasonably relied on the opinions of architect Arthur Merdinian and his reports concerning the Komolos Home being in compliance with the Indenture. They went into the surrounding area and found developments where mixed architectural styles and building materials were used to determine if such diversity could co-exist in harmony in the development. They determined that the Komolos Home, when compared to the current homes in the Subdivision, was of uniform quality and aesthetics.

40. They believed that the Komolos home would be aesthetically attractive, was a quality home, and would co-exist in harmony with the existing homes in the Subdivision. In fact, the progression of building of homes currently in the Subdivision is such that these homes are not identical and have both many different features and some common features.

41. They determined that a diversity of architectural styles could be used harmoniously in the Subdivision.

42. The board, based upon the information available to the board at the meeting and their experience, reasonably determined that the construction of the Komolos Home would be in compliance with the Indenture. The board, based upon the information available to the board, also reasonably believed that its construction would not diminish the value of the current homes in the Subdivision or the Subdivision as a whole in accordance with the independent real estate appraiser John Neff. Mr. Neff's appraisal of the current value of current homes in the Subdivision was between $677,125 and $860,000. In his capacity as a member of the board, Mr. Lemley did not present to the board any other appraisal or value information concerning the houses in the Subdivision before the board approved the plans for the Komolos Home. Further, Plaintiffs did not present any countervailing appraisals at trial. The Komolos Home fits comfortably within that range of values for the current homes, costing approximately $835,000.00, and would have cost over $1,000,000.00 had the Komolos family paid $400,000.00 for their lot, as did a number of the Plaintiffs.

These factual findings support the circuit court's decision that the board of the ASC HOA

acted reasonably and in good faith in approving McKelvey's building plans.

16

These factual findings also address the concerns of homeowners' argument that the McKelvey's plans were in violation of Article 10's architectural requirements. Article 10 provides as its purpose that "[t]he purpose of this review is to maintain the uniform quality and aesthetics of exterior architectural design for the best interests of the Community as a whole." The circuit court made special note of the "community as a whole" language of that provision, and found that the evidence and testimony presented proved the Komolos' home was harmonious and did not violate Article 10 of the Indenture. These decisions were supported by substantial evidence, were not against the weight of the evidence, and do not erroneously declare the law. *See Rouner*, 446 S.W.3d 242.

### D.  The Circuit Court erred in Granting Jefferson Bank's Request for Reimbursement

Jefferson Bank, after the trial, but prior to the circuit court's judgment, filed a motion for reimbursement. The motion sought recovery, of expenses incurred by Jefferson Bank for upkeep of the Arbors on a pro rata basis, from the homeowners and McKelvey. The circuit court granted the motion over the objections of the homeowners and ordered they each pay $418.27 as their share. This was error.

Article 6.2 provides that "Common Expenses may be assessed against one or more Lots, and collectible as assessments under Article VII, as follows: . . . (c) Any Common Expense or a portion thereof, the cost of which is separately metered per each Lot, may be charged, passed through, or directly assessed to each Lot." However, under Article 7, the ASC HOA had the exclusive ability to impose an assessment for expenses, and that had to be done on an annual basis, through the adoption of a budget. Jefferson Bank did

17

not have the authority to determine and request a pro rata assessment of the members of the ASC HOA, only ASC HOA, itself, had that authority. This Court reverses the decision of the circuit court granting Jefferson Bank's motion for reimbursement.

## Jefferson Bank's Cross-Appeal

Jefferson Bank cross-appeals the entry of summary judgment on its claims of slander of title and abuse of process in relation to the filing of a lis pendens by homeowners. Slander of title requires there be "false words that are maliciously published, causing the plaintiff to suffer a pecuniary loss or injury." *First Nat. Bank of St. Louis v. Ricon, Inc.*, 311 S.W.3d 857, 864 (Mo. App. 2010). Abuse of process requires:

> A pleading alleging abuse of process must set forth ultimate facts establishing the following elements: (1) the present defendant made an illegal, improper, perverted use of process, a use neither warranted nor authorized by the process; (2) the defendant had an improper purpose in exercising such illegal, perverted or improper use of process; and (3) damage resulted. The petition sufficiently alleges that damages resulted; accordingly we need inquire only if it states facts satisfying the remaining elements of the action.
>
> The phrase "use of process," appearing in element (1) above, refers to some wilful [sic], definite act not authorized by the process or aimed at an objective not legitimate in the proper employment of such process. (internal citations and quotation marks omitted).

*Ritterbusch v. Holt*, 789 S.W.2d 491, 493 (Mo. banc 1990). The homeowners need only eliminate one element of each claim to win on summary judgment, as there is no genuine issue of material fact. *See ITT Commercial Finance Corp. v. Mid-America Marine Supply Corp.*, 854 S.W.2d 371, 381 (Mo. banc 1993).

The filing of a lis pendens is governed by § 527.260, RSMo 2000, which provides:

18

> In any civil action, based on any equitable right, claim or lien, affecting or designed to affect real estate, the plaintiff shall file for record, with the recorder of deeds of the county in which any such real estate is situated, a written notice of the pendency of the suit, stating the names of the parties, the style of the action and the term of the court to which such suit is brought, and a description of the real estate liable to be affected thereby; and the pendency of such suit shall be constructive notice to purchasers or encumbrancers, only from the time of filing such notice.

Declaratory and injunctive relief are equitable remedies. *State ex rel. Leonardi v. Sherry*, 137 S.W.3d 462, 471 (Mo. banc 2004). As such, the plaintiffs were required to file a lis pendens pursuant to § 527.260, RSMo 2000 ("In any civil action, based on any equitable right, claim or lien, affecting or designed to affect real estate, the plaintiff shall file for record . . . a written notice of the pendency of the suit[.]"). This requirement negates the first element of abuse of process. Further, the filing of the lis pendens stating that a request for declaratory relief and a permanent injunction was pending, remedies in equity, was not "false words" negating a required element of a claim of slander of title. Therefore, the homeowners were entitled to judgment as a matter of law and the circuit court did not err in its grant of summary judgment in favor their favor.

### Conclusion

The circuit court's judgment is affirmed in all respects, except for its granting of Jefferson Bank's motion for reimbursement, which is reversed, and judgment is entered in favor of the homeowners and McKelvey on that issue.

_____
Zel M. Fischer, Judge

Russell, C.J., Breckenridge, Stith,
Draper and Wilson, JJ., concur;
Teitelman, J., dissents in separate opinion filed.

19



# SUPREME COURT OF MISSOURI
## en banc

THE ARBORS AT SUGAR CREEK
HOMEOWNERS ASSOCIATION,
ET AL.,

Appellants/Cross-Respondents,

v.

JEFFERSON BANK & TRUST CO., INC,

Respondent/Cross-Appellant,

and

MCKELVEY HOMES, LLC,

Respondent.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

No. SC94693

## DISSENTING OPINION

I respectfully dissent from the principal opinion to the extent it holds that

Jefferson Bank's actions did not violate the implied covenant of good faith and fair

dealing.[1] "Good faith is an 'obligation imposed by law to prevent opportunistic behavior,

that is, the exploitation of changing economic conditions to ensure gains in excess of

those reasonably expected at the time of contracting.'" *Frontenac Bank v. T.R. Hughes,*

*Inc.,* 404 S.W.3d 272, 280 (Mo. App. 2012) (quoting *Schell v. LifeMark Hospitals of*

---

[1] This dissent follows the rationale of the court of appeals opinion authored by the Honorable
Lisa Van Amburg.

*Missouri, Inc.,* 92 S.W.3d 222, 230 (Mo. App. 2002)).   Missouri courts have recognized that a party engages in bad faith by utilizing contract language allowing unilateral action to improperly deny the other party expected benefits flowing from the contract.  *Koger v. Hartford Life Ins. Co.,* 28 S.W.3d 405, 412 (Mo. App. 2000) (citing *Martin v. Prier Brass Mfg. Co.,* 710 S.W.2d 466, 473 (Mo. App. 1986) (exercising judgment "conferred by the express terms of agreement in such a manner as to evade the spirit of the transaction or so as to deny the other party the expected benefit of the contract" violates the duty of good faith)).   More specifically, Missouri courts have found bad faith when a developer amends a subdivision's declaration through a "devious attempt to circumvent" the intent reflected in that agreement.  *Rocky Ridge Ranch Property Owners Ass'n v. Areaco Investment Co., Inc.,* 993 S.W.2d 553, 556 (Mo. App. 1999).

The principal opinion distinguishes *Rocky Ridge* on grounds that Jefferson Bank's actions in this case did not amount to a "subterfuge."  I respectfully disagree and would hold that, despite the factual distinctions, Jefferson Bank's actions in this case are functionally equivalent to the actions in *Rocky Ridge.*  The original Indenture provided the homeowners with the significant benefit of self-governance of the subdivision by establishing that only residents could hold office on the neighborhood association's board of directors.  The Indenture went on to note that the underlying purposes included ensuring a general plan of development for  the "mutual benefit" of all owners and the participation of "every Owner" in the governance and administration of the neighborhood.   The Indenture ensured this participatory governance by specifying that the board of directors would consist entirely of residents of the subdivision.   As a result,

2

when the homeowners purchased their homes and Jefferson Bank subordinated its deeds of trust to the Indenture, all parties held a reasonable expectation that the neighborhood association would ultimately be governed by a board composed solely of subdivision residents.

Jefferson Bank's actions in amending the Indenture amounted to using its sudden majority status to unilaterally transition from the mutually beneficial participatory governance envisioned in the original Indenture to the exercise of authority for its own benefit. The evidence supports this conclusion. For instance, at trial, Jefferson Bank's president testified that "our interests are different" from those of the homeowners. He further testified that that Jefferson Bank's interests were "short term." In other words, "[t]he market has spoken . . . the market spoke that it wanted a different kind of home [in the subdivision]." Jefferson Bank's actions, as clarified by the president's testimony, leaves little doubt that Jefferson Bank leveraged the fallout of the Great Recession to circumvent the mutually beneficial purposes of the Indenture to satisfy its short-term financial interests.

I would reverse the judgment granting declaratory relief to Jefferson Bank.


_____
Richard B. Teitelman, Judge

3